STATE OF SOUTH CAROLINA v. PORT ROYAL & A. RY. CO.   KING et al. v. SAME.   OGDEN v. SAME.   Ex parte
LOUISVILLE & N. R. CO.

(Circuit Court, D. South Carolina.   March 15, 1897.)

1. RAILROAD LEASE—JOINT OWNERSHIP—BOARD OF MANAGEMENT.
Where all the business of a railroad lease was conducted by a board of commissioners under a name selected by the joint owners of the lease, and one of the joint owners became bound for a debt incurred to this board in the conduct of the business, the other joint owner had the right to maintain a suit to compel him to pay over the amount of that debt to the unincorporated association conducting the business of the lease, as that association could not maintain a suit against one of its members.

2. SAME—PRINCIPAL AND AGENT.
Where the common agent selected by the joint owners of a railroad lease to conduct the business of the lease was, by the terms of the agreement, to receive the gross earnings, and pay all current expenses, accounting to the principals for the net results, the several interests of the principals in any debt accruing to the agent in the conduct of the business do not arise until the accounts of the agent were made up and the gross earnings had been used in meeting the current expenses; and therefore one of the two joint owners of the lease may be compelled to pay over to the common agent the whole of a debt for which he is bound, and not merely one-half thereof.

3. SAME—MANAGERS HOLDING OVER.
Although an agreement between the joint owners of a railroad lease for the annual selection of commissioners to conduct the business of the lease made no provision for the commissioners thus selected to hold over in the event of a failure to select new commissioners, yet, as the public interest

' required it, and the very existence of the lease depended on it, it was the duty of the old board, when there was a failure to appoint new commissioners, to go on and preserve all interests for whom it might concern.

This is an intervening petition filed by the Louisville & Nashville Railroad Company to compel the receiver of the property of the Port Royal & Augusta Railway Company to pay over to the Georgia Railroad Company the amount of a claim for traffic balances due by the receiver to that company. The Louisville & Nashville Railroad Company is owner of a half interest in a lease of the Georgia Railroad & Banking Company, and the Georgia Railroad Company is merely a name selected by the owners of that lease under which all the business of the lease is conducted, and in the conduct of which the claim in question arose.

Joseph B. Cumming, for petitioner.

Henry Crawford and Mitchell & Smith, for purchasers.

SIMONTON, Circuit Judge. This is an intervention in the main causes, seeking payment of a claim against the receiver, held by the Georgia Railroad Company. The claim is for traffic balances due by the receiver to that company. Under the terms of the order of sale, the purchaser of the Port Royal & Augusta Railway property assumed the payment of debts due by the receiver. The facts of the case upon which depends the solution of the issues made by the petitioner are these:

W. M. Wadley obtained from the Georgia Railroad & Banking Company a lease of its railroad line and railroad property for 99 years, on an agreed rental. He assigned one-half interest in the lease to the Louisville & Nashville Railroad Company. The terms of the assignment were these:

"This agreement, made and entered into this 17th day of May, 1881, by and between William M. Wadley, of Monroe county, Georgia, of the first part, and the Louisville and Nashville Railroad Company, of the second part, witnesseth: Whereas, the said party of the first part has become the lessee of the Georgia Railroad, with all its dependencies, as will more fully appear by a copy of the lease hereto attached; and whereas, it is deemed of great importance to the said Louisville and Nashville Railroad Company to become interested in said lease in connection with other parties: Now, therefore, it is hereby mutually covenanted and agreed that the said party of the second part, for and in consideration of the sum of twelve thousand five hundred dollars ($12,500) paid by the party of the second part to the said party of the first part, and the deposit of five hundred thousand dollars ($500,-000) of bonds, being one-half the amount stipulated to be deposited, as security for the faithful performance of said lease, with the Farmers' Loan and Trust Company of the city of New York, the said party of the second part shall be entitled to an equal joint control and management of the said Georgia Railroad and its dependencies, together with one-half interest in all advantages and profits resulting from the same; it being understood and agreed that the said Georgia Railroad and its dependencies shall be managed by a board of six commissioners to be appointed annually, three to be chosen by the said party of the second part, and the other three by such other party as may control the other one-half interest in the said lease, said six commissioners to elect a seventh, who shall be president of the board and chief executive officer for the management of the property under the control of the board. Should the six commissioners, as chosen, be unable or fail to agree upon the seventh as president of the board, then and in that event an impartial umpire shall be

selected to decide; and his decision shall be final. This covenant and agreement to continue of full force and effect for and during the full term for which the Georgia Railroad and dependencies has been leased to the said party of the first part, and to include all profits already accrued under said lease since its commencement."

On the 1st of June, 1881, the assignment of the other half of the lease was made to the Central Railroad & Banking Company of Georgia, in writing, on the same terms.    This leased property was conducted as provided in these assignments for several years.    But the Central Railroad & Banking Company was put into the hands of receivers, who took the place of the Central, and shared in the lease during the receivership.    The proceedings under which the receiver was appointed culminated in a sale of the property of the Central Railroad.    Messrs. Ryan & Thomas, who purchased at this sale, claimed to have purchased, with all the other property, the interest in this lease.    This, however, has been denied by Mr. Comer, who was one of the receivers of the Central Railroad & Banking Company; and these adverse claims are still unsettled.    In the meantime the Georgia Railroad was operated by the Georgia Railroad Company.    In their operations a large business was done with the Port Royal & Augusta Railway Company, which connected with the Georgia Railroad, and from this business grows this claim for traffic balances.    The Georgia Railroad Company is not a corporation.    It is only a name selected by the owners of the lease under which all the business pertaining to that lease is conducted.    The practice was to submit monthly accounts to each of the owners of the lease, and to pay over to each one-half of the net results of the business of the month.    When the annual rental became due, each owner of the lease paid its one-half of the entire annual rent into the hands of the Georgia Railroad Company, who paid it to the lessors.    Since the sale of the Central Railroad & Banking Company, the Louisville & Nashville Railroad Company has paid the whole rental, and has received all the monthly profits.    The petition filed by the Louisville & Nashville Railroad Company prays that the receiver be ordered to pay the balance due on traffic balances to the general manager of the Georgia Railroad Company.    The prayer of the petition is resisted by Messrs. Ryan & Thomas, the purchasers of the Port Royal & Augusta Railway Company, who file a demurrer thereto.

The first question is as to the right of the Louisville & Nashville to prefer this petition.    Assuming, for the sake of argument, that Messrs. Ryan & Thomas are the owners of one-half of interest in this lease, can the Louisville & Nashville Railroad Company maintain this petition?    Were the petition presented by the Georgia Railroad Company, then, under the assumption we have made, we would have a suit by an association composed in part of Messrs. Thomas & Ryan against Messrs. Thomas & Ryan; that is, they would be plaintiffs and defendants in the same action.    Under the law of South Carolina (Rev. St. § 1776), an unincorporated association may be sued and proceeded against by the name and style it is usually known, without naming the individual members.    No pro-

vision of this character is made for suits by them. If, however, such were the case, it could not change the rule of law that the same person cannot be in the same right plaintiff as well as defendant. This being so, in what way could this claim be brought into court, and adjudicated, other than that adopted here? The main cause is on the equity side of the court. The proceeding, in effect, is one asking that a debt incurred with the manager of the business, the person to whom normally and by contract it would have been paid, be paid to it, to be accounted for, with all the other results of the business, in the mode provided by the standing agreement between the real owners of the property, the principals of this common agent.

The other objection to the granting of the prayer of the petition is that this is a debt due to the Georgia Railroad Company; that Messrs. Thomas & Ryan are part owners in the business conducted under that name, as owners of one-half the leasehold interest; and that, at the most, they can only be called upon to pay the one-half of the claim. As I understand it, the owners of this lease selected a common agent to manage and conduct the entire interest in the lease. This involved the management and conduct of a large and valuable business as common carriers over an important link in several through lines. The common agent, in the conduct of this business, received the earnings, and paid all current expenses. It accounted with its principals for all its receipts, and they were entitled to the net results. But, by the mutual agreement, all the earnings went first into the hands of the common agent, and the several interests of the principals therein did not arise until the accounts of the agent were made up, and the gross earnings had been used in meeting the current expenses. This being the case, no one of the owners could go to a debtor of the Georgia Railroad Company, and demand the one-half of the debt he owed. Such part owner did not have a several interest in that debt or the amount it represented. Under the contract between these owners, all earnings go to the common agent. It alone is authorized to receive and receipt for them. And, when so received, they are expended and accounted for. This being so, the receiver of the Port Royal & Augusta Railway Company was bound to pay over to the Georgia Railroad Company the traffic balances, and this obligation has, under the terms of sale, devolved upon the purchaser.

It has been assumed, for the purposes of this opinion, that Messrs. Thomas & Ryan are the owners of one-half this leasehold estate. The pleadings are not of a character to discuss and decide this question; nor is it now discussed or decided. Upon its determination other questions will arise, which may affect the payment of the money now claimed,—questions between the different owners of the leasehold estate and the equities existing between them. It is to be regretted that the pleadings are not in such shape as to justify a consideration of them. But the present proceeding presents but one class of questions: Did the receiver of the Port Royal & Augusta Railway owe the traffic balances claimed here in his transactions with the Georgia Railroad Company? What is the amount

of these balances? These seem not to be disputed. Then to whom must these be paid? In my opinion, they must be paid to the only person authorized to receive them, the Georgia Railroad Company.

It has been urged with much force that the agreement provides for the selection, by each part owner of the leasehold interest, of three commissioners annually; that there is no provision under which they can hold over; that there have been no commissioners appointed by both part owners for several years; and that the so-called "association" is functus officio. But in view of the disputed rights which exist, especially in view of the fact that the commissioners and chief executive officer in charge when the disputed point arose have been intrusted with a railroad of quasi public character, which must be kept a going concern, not only because the public interest required it, but because the very existence of the lease depended on it, it was the right and duty of the board to go on and preserve all interests for whom it may concern. Their administration of these trusts, thrust upon them by peculiar and unforeseen circumstances, can, and no doubt will, be criticised and examined hereafter. The demurrer is overruled, with leave to the respondents to answer over if so advised.